UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CRAIG and ANNE MONTGOMERY, spouses, and their marital community; and the KITSAP COUNTY DEPUTY SHERIFF'S GUILD,<br><br>Plaintiffs,<br><br>v.<br><br>KITSAP COUNTY,<br><br>Defendant. | Case No.  C05-5225KLS<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSAL |

This matter comes before the Court on defendant's motion for summary judgment and dismissal. (Dkt. #15). The parties have consented to have this matter be heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Magistrates Rule 13. Having reviewed defendant's motion, plaintiffs' responses thereto and the remaining record, the Court hereby finds and orders as follows.

FACTUAL AND PROCEDURAL BACKGROUND

This case involves a complaint alleging deprivation of civil rights under 42 U.S.C. § 1983 and

ORDER
Page - 1

breach of contract. Plaintiff Craig Montgomery ("Montgomery") began working as a full-time Deputy Sheriff for the Kitsap County Sheriff's Office ("Sheriff's Office") in July 1993. Exhibit A, p. 4, attached to Defendant's Motion for Summary Judgment and Dismissal[1] (Dkt. #13). Effective January 1, 2000, defendant and plaintiff Kitsap County Deputy Sheriff's Guild ("Guild"), which apparently represents Sheriff's Office officers such as plaintiff Montgomery, entered into a collective bargaining agreement ("CBA"). Defendant's Exhibit K. The CBA was in effect through December 31, 2002. Id.

In early 2001, Kitsap County Undersheriff Dennis Bonneville ("Undersheriff Bonneville") and Patrol Chief Wayne Gulla ("Chief Gulla"), plaintiff Montgomery's immediate supervisor, concluded an investigation was warranted in response to certain allegations of misconduct by plaintiff Montgomery, including car insurance fraud committed prior to his employment with the Sheriff's Office. Defendant's Exhibit A, pp. 4-6. On May 2, 2001, plaintiff Montgomery was informed he would be placed on paid administrative leave pending the outcome of the investigation. Id. at p. 6.

The investigation of plaintiff Montgomery was completed by November 2001. Id. at p. 7. After reviewing the evidence obtained from the investigation, Chief Gulla sent plaintiff Montgomery a letter on December 19, 2001, outlining his preliminary determinations and the potential sanctions. Id.; Defendant's Exhibit C. A hearing was held on January 24, 2002, at which plaintiff Montgomery and the Guild were afforded the opportunity to rebut the allegations of misconduct. Defendant's Exhibit A, p. 7.

Additional investigations were made at the request of Chief Gulla, which caused him to change his preliminary determinations regarding several of the allegations. Id. On March 8, 2002, Chief Gulla delivered a written notice of termination to plaintiff Montgomery in which he sustained five of the seven original allegations and three of the seven expanded allegations against plaintiff Montgomery. Id.; Defendant's Exhibit D. Chief Gulla concluded that six of the eight sustained allegations warranted termination. Defendant's Exhibit A, p. 7-8, and Exhibit D.

The Guild filed a grievance of the termination, which was denied on April 5, 2002. Defendant's Exhibit A, p. 8, attached to Defendant's Motion. The Guild then filed a demand for arbitration pursuant to

---

[1] Defendant originally filed its motion for summary judgment and dismissal on May 11, 2006. (Dkt. #12). Along with that motion, defendant filed a number of attached exhibits. (Dkt. #13). On May 12, 2006, defendant filed a "corrected" motion for summary judgment and dismissal, replacing the originally-filed motion, but not the exhibits attached thereto. (Dkt. #15). Each such exhibit hereinafter shall be referred to as "Defendant's Exhibit."

ORDER
Page - 2

1 the CBA. Id.  Arbitration hearings were held before Arbitrator David W. Gaba ("Arbitrator Gaba") of the

2 American Arbitration Association in January and March 2003, at which plaintiffs and defendant appeared

3 and presented evidence in support of their respective positions. Id.; Complaint, p. 4.  The parties also filed

4 post-hearing briefs on June 3, 2003. Defendant's Exhibit A, p. 8.

5 On June 23, 2003, Arbitrator Gaba issued a written decision, sustaining the allegation that plaintiff

6 Montgomery had committed car insurance fraud prior to his employment with the Sheriff's Office, and the

7 expanded allegation that he lied repeatedly about the car insurance fraud, including under oath during the

8 Sherriff's Office's internal investigation into that allegation. Defendant's Exhibit A, pp. 19-24.  Arbitrator

9 Gaba also found defendant had just cause for terminating plaintiff Montgomery based on the above noted

10 expanded allegation, and therefore upheld that termination. Id. at pp. 25-28.

11 On March 4, 2005, plaintiffs filed a complaint in the Washington State Pierce County Superior

12 Court, alleging that defendant violated plaintiff Montgomery's due process rights and breached the terms of

13 the CBA. See Complaint (Dkt. #1).  Specifically, they allege plaintiff Montgomery's due process rights

14 were violated because he was terminated without a proper Loudermill hearing,[2] in that he was not able to

15 respond to the actual decision-maker in his discharge. Id. at pp. 7-9.  Plaintiffs further allege defendant

16 breached the CBA by providing fraudulent testimony at the arbitration hearing. Id. at p. 9.

17 Defendant filed a notice of removal of this matter to this Court on March 24, 2005. (Dkt. #1).  On

18 May 11, 2006, defendant filed its original motion for summary judgment and dismissal of plaintiffs'

19 complaint. (Dkt. #12).  Defendant argues dismissal is proper in this case because plaintiffs have failed to

20 establish a violation of plaintiff Montgomery's due process rights, because the statute of limitations for

21 filing their complaint has passed, and because of the doctrine of laches.  Defendant further argues that

22 plaintiff Guild has failed to state a cause of action for breach of contract.

23 Plaintiffs' responses to defendant's motion for summary judgment and dismissal and defendant's

24 reply thereto have been received by the Court.  Accordingly, that motion is now ripe for consideration.

25 While plaintiff Montgomery requests oral argument in this matter, the Court finds such argument to be

26 unnecessary.  For the reasons set forth below, the Court agrees with defendant that its motion for summary

27

28    [2]As explained in further detail below, this is in reference to the kind of pre-termination hearing the United States Supreme Court in Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985), found is required prior to discharging persons who have a constitutionally-protected property interest in their employment.

ORDER
Page - 3

judgment should be granted and that this matter should be dismissed.

## DISCUSSION

I.  Standard of Review

Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56(c). In deciding whether summary judgment should be granted, the court must view the record in the light most favorable to the nonmoving party and indulge all inferences favorable to that party. Fed. R. Civ. P. 56(c) and (e). When a summary judgment motion is supported as provided in Fed. R. Civ. P. 56, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but that party's response, by affidavits or as otherwise provided in Fed. R. Civ. P. 56, must set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e). If the nonmoving party does not so respond, summary judgment, if appropriate, shall be rendered against that party. Id.

The moving party must demonstrate the absence of a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude summary judgment. California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a grant of summary judgment." Id. Rather, the nonmoving party "must produce at least some 'significant probative evidence tending to support the complaint.'" Id. (quoting Anderson, 477 U.S. at 290); see also California Architectural Building Products, Inc., 818 F.2d at 1468 ("No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment."). In other words, the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990).

II. Plaintiffs' Claims Are Not Barred by the Statute of Limitations

The Civil Rights Act, 42 U.S.C. § 1983, contains no statute of limitations. As such, "[t]he statute of

limitations for section 1983 actions is determined by state law." <u>Trimble v. City of Santa Rosa</u>, 49 F.3d 583, 585 (9th Cir. 1995). In addition, "[s]ection 1983 actions are characterized as personal injury actions for statute of limitations purposes." <u>Id.</u> In Washington, a plaintiff has three years to file a personal injury action. <u>Rose v. Rinaldi</u>, 654 F.2d 546 (9th Cir 1981).

Defendant argues plaintiffs allege in their complaint that plaintiff Montgomery was denied his due process rights due to deficiencies in his January 24, 2002 pre-termination hearing. Defendant thus asserts plaintiffs' complaint, which was not filed until March 4, 2005, was untimely in that it was filed more than three years after the date of the claimed civil rights violations. Plaintiff Montgomery argues his damages did not arise until he was terminated on March 8, 2005, and therefore this action was timely. The Court finds plaintiff Montgomery's argument much more persuasive.

Plaintiffs' complaint clearly alleges plaintiff Montgomery's due process rights were violated as the result of being <u>terminated</u> without the benefit of a proper <u>Loudermill</u> hearing. <u>See</u> Complaint, pp. 7, 9. In other words, plaintiff Montgomery is claiming a civil rights violation based on <u>both</u> the deficiencies in the pre-termination hearing <u>and</u> the fact that he was actually terminated. Indeed, as pointed out by plaintiffs, it makes no sense to say plaintiff Montgomery suffered a deprivation of his due process rights (i.e., a loss of his property interests) until after that loss occurred, that is, until after he was discharged from his job. In other words, up until the date plaintiff Montgomery was finally terminated, defendant could have acted to cure any alleged defect in the process it afforded him.

As to plaintiff Guild's claim of fraud/breach of contract, it too appears to have been timely filed. Under Washington law, the statute of limitations for breach of contract is six years and for fraud is three years. <u>See</u> RCW 4.16.040(1); RCW 4.16.080(4). The fraudulent testimony upon which this claim is based allegedly occurred during the arbitration hearing held in January and March 2003. Because plaintiffs' complaint was filed on March 4, 2005, the fraud/breach of contract claim clearly fell well within either statute of limitations period.[3] Defendant argues plaintiffs have not sufficiently stated a breach of contract claim, since they did not use the terms "contract" or "breach of contract." However, plaintiffs' complaint expressly alleges that by "introducing perjured testimony" at the arbitration hearing, defendant "breached

---

[3]In addition, Washington law states that a cause of action for relief upon the ground of fraud is "not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting fraud." RCW 4.16.080(4). As discussed below, plaintiffs claim they did not learn of the alleged fraud until the day June 24, 2003, the day after Arbitrator Gaba issued his decision.

ORDER
Page - 5

the grievance and arbitration provisions of the CBA." Complaint, p. 9.

III.    The Doctrine of Laches Is Not Applicable to this Case

Defendant argues that independent of the statute of limitations issue, this Court should look to the doctrine of laches in finding plaintiffs' complaint to be untimely. "Laches is an equitable time limitation on a party's right to bring suit." Boone v. Mechanical Specialties Co., 609 F.2d 956, 958 (9th Cir. 1979). The doctrine of laches "bars an action where a party's unexcused or unreasonable delay has prejudiced his adversary." Id. While it may be that "[t]he bare fact of delay creates a rebuttable presumption of prejudice," the doctrine is designed to protect "against difficulties caused by the unreasonable delay in bringing an action." Id. (emphasis added) (citation omitted).

The Court finds any delay on the part of plaintiffs in bringing this action was neither unreasonable nor did it result in actual prejudice to defendant. As discussed above, plaintiffs' claims were filed within the statute of limitations governing them. That alone is a strong indication that any delay in the filing of plaintiffs' claim was not unreasonable. In addition, defendant has failed to show it has suffered any real prejudice due to such delay. Although defendant makes a general statement that necessary witnesses have retired or left its employ and that memories have faded, no specific evidence has been provided to show that this is the case or exactly how such would result in prejudice.[4]

IV.    Plaintiff Montgomery Has Failed to Establish a Violation of His Due Process Rights

Defendant argues plaintiff Montgomery fails to allege a valid due process violation. Defendant asserts that while plaintiff Montgomery has challenged the sufficiency of due process he received at the pre-termination hearing, he has not done so with respect to the post-termination hearing conducted before Arbitrator Gaba. Thus, defendant argues, whatever claims plaintiff Montgomery has made concerning the pre-termination hearing, he was provided a full and fair post-termination hearing, and therefore was given all the process that was due.

Plaintiff Montgomery counters that defendant misconstrues his claims by focusing on the events that

---

[4] As support for its position on this issue, defendant points to the Ninth Circuit's finding that the employer in Boone "should not be held responsible for the intervening deaths, retirements, voluntary and involuntary terminations, which normally occur with the passage of time." Id. at 959. Boone, however, clearly is distinguishable on its facts. In that case, the plaintiff had waited seven years before filing his complaint, after having "repeatedly refused" offers of government assistance in instituting legal action against the defendant. Id. In addition, the defendant in Boone was able to show that most of the witnesses were "no longer available" and that many of its key employees at the time of the plaintiff's dismissal "would not be able to testify at trial." Id. Defendant in this case has made no such showing.

ORDER
Page - 6

1  occurred at the pre-termination hearing, rather than on what happened at the arbitration hearing.  He argues
2  that in addition to the deficiencies in the pre-termination hearing noted above, what is also at issue in this
3  case is the failure by defendant to provide him with a full, fair and impartial post-termination arbitration
4  hearing.  Specifically, plaintiff Montgomery asserts that the false testimony regarding Chief Gulla's
5  decision-making authority presented at the arbitration hearing, and the role that testimony played in
6  Arbitrator Gaba's decision-making process, rendered that hearing ineffective.

7  The Due Process Clause of the United States Constitution "provides that certain substantive rights –
8  life, liberty, and property – cannot be deprived except pursuant to constitutionally adequate procedures."
9  Gleveland Board of Education v. Loudermille, 470 U.S. 532, 541 (1985).  Although the state "may elect not
10 to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of
11 such an interest, once conferred, without appropriate procedural safeguards."  Id.  Thus, it first must be
12 determined whether such a property interest exists.

13 Here, the parties do not dispute that plaintiff has a property interest in his continued employment
14 with the Sheriff's Office.  "Once it is determined that the Due Process Clause applies," that is, plaintiff has a
15 protected property interest, "the question remains what process is due."  Id. (citation omitted).  "An essential
16 principal of due process is that a deprivation of life, liberty, or property 'be preceded by notice and
17 opportunity for hearing appropriate to the nature of the case,'" and that the opportunity for hearing be given
18 before the deprivation of any significant property interest. Id. at 542 (citation omitted).

19 Of particular importance to this case, "[t]his principal requires 'some kind of a hearing' prior to the
20 discharge of an employee who has a constitutionally protected property interest in his employment."  Id.
21 (citation omitted).  This "pre-termination 'hearing,' "though necessary, need not be elaborate."  Id. at 545.
22 Rather, "[t]he formality and procedural requisites for the hearing can vary, depending upon the importance
23 of the interests involved and the nature of the subsequent proceedings."  Id. (citation omitted).  However,
24 "[i]n general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative
25 action."  Id. (citation omitted).

26 This pre-termination hearing, known as a Loudermill hearing, also "need not definitively resolve the
27 propriety of the discharge."  Id.  Instead, "[i]t should be an initial check against mistaken decisions –
28 essentially, a determination of whether there are reasonable grounds to believe that the charges against the
employee are true and support the proposed action."  Id. at 545-46.  Of fundamental importance is that the

1 employee should be given the opportunity to respond, that is, "[t]he opportunity to present reasons, either in
2 person or in writing, why proposed action should not be taken." Id. at 546.

3     Defendant argues that plaintiff Montgomery's failure to allege a defective post-termination hearing
4 precludes him from establishing a due process violation. Plaintiff Montgomery counters that defendant has
5 misconstrued his claims, and that he has alleged defects in the post-termination arbitration hearing he
6 received as well. As discussed above, it seems clear that the complaint alleges civil rights claims based on
7 the absence of a proper Loudermill hearing and the deprivation of property interests without due process.
8 On the other hand, while the complaint does discuss the arbitration hearing, it does so solely in the context
9 of establishing the bases for the pre-termination hearing and discharge claims. Nowhere in the complaint is
10 there any statement to the effect that defects in the post-termination hearing itself resulted in a violation of
11 plaintiff Montgomery's due process rights.[5]

12     Nevertheless, plaintiff Montgomery's failure to allege a post-termination hearing due process
13 violation does not necessarily mean the due process claims they did raise are without merit. The Supreme
14 Court's holding in Loudermill rested "in part" on the provisions in Ohio's law providing for "a full post-
15 termination hearing." Id. at 546. The Supreme Court concluded that all the process the plaintiffs were due
16 in that case was "a pretermination opportunity to respond, coupled with" the post-termination procedures
17 provided by Ohio law. Id. at 547-48. Because the plaintiffs' claims alleged a lack of opportunity to give a
18 pre-termination response, however, the Supreme Court found the District Court erred in dismissing for
19 failure to state a claim and thus remanded for further proceedings. Id. at 548.

20     It appears, therefore, that the Supreme Court's decision in Loudermill allows for claims alleging a
21 violation of due process based on a lack of opportunity to respond, even though post-termination hearing
22 procedures may have been constitutionally sufficient. It is true, as defendant points out, that "the failure to
23 provide an impartial decisionmaker at the pretermination stage, of itself, does not create liability, so long as
24 the decisionmaker at the posttermination hearing is impartial." Walker v. City of Berkeley, 951 F.2d 182,
25 184 (9th Cir. 1991). In this case, however, plaintiff Montgomery, as he asserts, has not claimed that the

---

27     [5]Indeed, as pointed out by defendant, the headings for the two civil rights claims included in the complaint read in relevant part
as follows: "Deprivation of Civil Rights – Failure to Provide Proper *Loudermill* Hearing Due to Misrepresentation of Authority by
28 Gulla" and "Deprivation of Civil Rights – Failure to Provide Proper *Loudermill* Hearing Due to Misrepresentation of Authority by
Boyer." Complaint, pp. 7-8. Neither heading, nor the body of the claims themselves, reasonably can be said to indicate plaintiff
Montgomery also intended to raise a due process violation claim regarding defective post-termination procedures.

ORDER
Page - 8

decision-maker at his pre-termination hearing lacked impartiality, but that he "was never able to respond to the actual decision-maker in his discharge." Complaint, pp. 7, 9.  As discussed above, this is sufficient to allege a due process violation.

The question that remains therefore, is whether that allegation has any merit.  The Court finds it does not.  To survive a summary judgment motion, "a party does not necessarily have to produce evidence in a form that would be admissible at trial," as long as that party satisfies the requirements of Fed. R. Civ. P. 56. Block v. City of Los Angeles, 253 F.3d 410, 419 (9th Cir. 2001).  Fed. R. Civ. P. 56 "requires that, in opposing summary judgment," affidavits are to be made "on personal knowledge" and must "set forth such facts as would be admissible in evidence." Id.; Courtney v. Canyon Television & Appliance Rental, Inc., 899 F.2d 845, 851 (9th Cir. 1990).  Thus, any statements which are hearsay, or which "are not included within any exception to the hearsay rule," are "inadmissable at summary judgment." Id.; Sunset Bay Ass'n v. Plastino, 944 F.2d 1503, 1514 (9th Cir. 1991) (party cannot introduce hearsay to defeat summary judgment motion).

Both plaintiff Montgomery and plaintiff Guild rely on the declaration of Michael T. Rodrigue, a Sheriff's Office detective and the current Guild president, to show Undersheriff Bonneville and Chief Gulla "knew at the time of their [arbitration] testimony that it was false that Gulla was the decision maker [at the pre-termination hearing and in discharging plaintiff Montgomery] and he was in fact not the decision-maker." Declaration of Michael T. Rodrigue in Support of Plaintiff Guild's Response in Opposition to Motion for Summary Judgment ("Rodrigue Declaration"), p. 3 (Dkt. #22).  Detective Rodrigue further declared in relevant part as follows:

> **6. Written Decision and Award.** On June 23, 2003, the Arbitrator made his written decision and award, which I reviewed.  The Arbitrator concluded that the County had just cause to terminate Deputy Craig Montgomery.  As one basis for sustaining the discharge, Arbitrator Gaba determined that Chief Gulla had testified truthfully about his role as the decision-maker at the meeting on March 8, 2002.  Further, Arbitrator Gaba believed that at the time of his testimony, Chief Gulla had already retired, therefore, he had no motive to lie.
> **7. Chief Gulla Admits to Perjury.** On June 24, 2003, the next day, I along with Guild Vice President Roger Howerton met with Chief Gulla.  During this meeting, I explained to Gulla that I was disappointed in the fact that the arbitrator felt that Craig Montgomery had been untruthful in his testimony but believed the Undersheriff and that Chief Gulla's testimony supported the Undersheriff's regarding who the decision-maker

was.[6] <u>To this chief Gulla shook his head "No." I then told Chief Gulla that the arbitrator had mentioned in his decision that because Gulla was already retired at the time of the hearing he had no motive to lie. To this Gulla told us that he was not retired at the time he testified but that he had four more days before his official retirement and that there was a problem with his being allowed to cash out his sick leave or his annual leave. Chief Gulla further stated that at the time of the hearing he was in the process of working out a deal with the County regarding the receipt of these retirement benefits. Chief Gulla explained that when he testified, he was worried that the administration could interfere with his receiving the retirement benefits. Chief Gulla further admitted that, despite his testimony in the arbitration, he was not the decision-maker but that all decisions were made by Undersheriff Bonneville. I also learned previously, Deputy Rich Smith had had a similar conversation with Chief Gulla during which Chief Gulla had similarly admitted that his retirement benefits were being held up.</u>

Rodrigue Declaration, p. 4 (emphasis added).

The above statements attributed to Chief Gulla and Deputy Smith clearly constitute hearsay. That is, they are statements other than ones made by the declarant while testifying at a trial or hearing, "offered in evidence to prove the truth of the matter asserted." Federal Rule of Evidence ("Fed. R. Evid.") 801(c); see also <u>United States v. Crouch</u>, 731 F.2d 621, 623 (9th Cir. 1984) ("It is elementary that statements made outside the courtroom and offered to prove the truth of those statements are hearsay."). Accordingly, the statements attributed to Chief Gulla and Deputy Smith, which do not appear to fall within any exceptions to the hearsay rule, may not be relied on by plaintiffs to defeat defendant's motion.[7]

Indeed, defendant submitted a declaration by Chief Gulla, in which Chief Gulla in no uncertain terms stated that "[a]t no time did I tell Detective Rodrigue or anyone else that the decision to terminate Craig Montgomery was not my own." Declaration of Wayne Gulla, attached to Defendant's Reply in Support of Motion for Summary Judgment and Dismissal, p. 2 (Dkt. #26). Although the court must view the record in the light most favorable to the nonmoving party and indulge all inferences favorable to that party (see Fed. R. Ci. P. 56(c) and (e)), as discussed above, the statements attributed to Chief Gulla and Detective Smith by Detective Rodrigue in his declaration may not be relied on by plaintiffs in opposing defendant's motion for summary judgment. Therefore, that leaves Chief Gulla's declaration that he never

---

[6] Affidavits offered to oppose a summary judgment motion are to "be made on <u>personal</u> knowledge." Fed. R. Civ. P. 56(e) (emphasis added). The Court notes, however, that Detective Rodrigue has provided his own summary of the arbitration proceedings here and in the previous paragraph, with no citation to the actual hearing transcript or arbitrator's decision.

[7] At first glance, it might appear the statements attributed to Chief Gulla are not hearsay at all, in that they could be said to have been "offered against a party" by that party's servant concerning a matter within the scope of the employment, "made during the existence of the relationship." Fed. R. Evid. 801(d)(2)(D). However, even if the Court were to take as true the claim that Chief Gulla was still employed with the Sheriff's Office at the time the arbitration hearing took place, apparently he was no longer so employed when he allegedly met with, and made the above statements to, Detective Rodrigue and Guild Vice President Howerton. See Rodrigue Declaration, pp. 3-4.

ORDER
Page - 10

told anyone that the decision to terminate plaintiff Montgomery was not his own.

While, as discussed above, the Court found that plaintiff Montgomery has not alleged a violation of his due process rights with respect to the post-termination arbitration hearing, the Court notes that even if it could be said that he did so, that allegation would fail as well. Plaintiff Montgomery alleges in his response to defendant's motion for summary judgment that the false testimony provided by Chief Gulla and Undersheriff Bonneville regarding Chief Gulla's decision-making authority rendered the arbitration hearing ineffective, thereby depriving him of any post-termination hearing. However, as discussed above, the evidence upon which plaintiff Montgomery relies to support his allegation of false testimony may not be used to oppose defendant's motion.

Plaintiff Montgomery, furthermore, misunderstands the nature of his due process rights in regard to the post-termination hearing he received. Plaintiff Montgomery has not alleged that Arbitrator Gaba was not impartial or that he was not provided the "opportunity to present his side of the story" at the arbitration hearing. Loudermill, 470 U.S. at 546. In other words, "[w]here there is a system of post-termination procedures available to the employee that includes a neutral decisionmaker and/or arbitrator, coupled with a pretermination 'right of reply' hearing, then the employee has received all the process due under the Constitution." Farhat v. Jopke, 370 F.3d 580, 596 (6th Cir. 2004).

As succinctly stated by the Sixth Circuit Court of Appeals:

> The law is well-established that it is the *opportunity* for a post-deprivation hearing before a neutral decisionmaker that is required for due process. As long as the procedural requirements are reasonable and give the employee notice and an opportunity to participate meaningfully, they are constitutionally adequate.

Id. (emphasis in original). Thus, in Farhat, the fact that the plaintiff "was given the opportunity for a post-termination proceeding, before a neutral arbitrator," belied "his claim that due process was denied." Id. at 597 (finding Constitution requires nothing more than opportunity for post-termination arbitration presided over by neutral arbitrator). Indeed, other courts of appeals, including the Ninth Circuit, have found that grievance procedures provided by a collective bargaining agreement can satisfy a terminated employee's entitlement to post-deprivation due process. See Hennigh v. City of Shawnee, 155 F.3d 1249, 1256 (10th Cir. 1998); Wallace v. Tilley, 41 F.3d 296, 301-02 (7th Cir. 1994); Armstrong v. Meyers, 964 F.2d 948, 950 (9th Cir. 1992) (public employer may meet its obligation to provide due process through grievance procedures established in collective bargaining agreement).

Where, as in this case, a "claim of unlawful discharge was submitted to binding arbitration," and the terminated employee "had a chance to call witnesses and introduce evidence on his behalf at that arbitration," the arbitration constitutes "sufficient protection against a wrongful or erroneous discharge." Powell v. Mikulecky, 891 F.2d 1454, 1459-60 (10th Cir. 1989); see also Brown v. Texas A & M University, 804 F.2d 327, 335-36 (5th Cir. 1986) (receipt of full evidentiary hearing before mutually-selected, impartial arbitrator precluded plaintiff from establishing deprivation of constitutionally adequate post-termination procedures). Accordingly, the question of whether false testimony was presented at the arbitration hearing by defendant is not relevant to the issue of whether plaintiff Montgomery's post-termination due process rights were violated. Plaintiff Montgomery has not alleged or shown that he was not provided the opportunity to call witnesses and introduce evidence before a neutral arbitrator pursuant to binding arbitration. As such, his due process claim must fail.

V.     Plaintiff Guild's Breach of Contract Claim Cannot Be Sustained

The only claim that remains in this case, therefore, is plaintiff Guild's fraud/breach of contract claim. Clearly, resolution of this claim calls for the application of state, not federal, law. The decision as to whether to retain supplemental jurisdiction over a state law claim is entirely within Court's discretion. Brady v. Brown, 51 F.3d 810, 816 (9th Cir. 1995); United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) (supplemental jurisdiction is doctrine of discretion, not of plaintiff's right). In order for supplemental jurisdiction to apply, there must be "a common nucleus of operative fact between the state and federal claims." Gilder v. PGA Tour, Inc., 936 F.2d 417, 421 (9th Cir. 1991). Here, clearly plaintiff Montgomery's due process claims and plaintiff Guild's fraud/breach of contract claims arise from the same set of facts, the events surrounding plaintiff Montgomery's termination.

In weighing whether to retain jurisdiction over plaintiff Guild's claim, however, the Court also must weigh "factors such as economy, convenience, fairness, and comity." Brady, 51 F.3d at 816. Here, those factors would seem to weigh against retaining jurisdiction over that claim. First, dismissal of that claim would not be inappropriate at this stage of the proceedings. Gibbs, 383 U.S. at 726 (where federal claims are dismissed before trial, even though not insubstantial in jurisdictional sense,[8] state claims should be

---

[8] A federal claim is "insubstantial" only "if it is absolutely devoid of merit or obviously frivolous." Gilder, 936 F.2d at 421. "The ultimate lack of merit of the federal claim does not mean that such claim was not substantial for purposes of conferring jurisdiction." Id. As discussed above, plaintiff Montgomery's due process claims, although ultimately found to be without merit, cannot

ORDER
Page - 12

dismissed as well). Second, within plaintiff Guild's claim state law issues obviously "substantially predominate," and thus that claim "may be dismissed without prejudice and left for resolution" to the state's courts. Id. at 726-27. Finally, since it cannot be said that plaintiff Guild's claim is "so closely tied to questions of federal policy that the argument for exercise" of supplemental jurisdiction "is particularly strong," the Court may decline to exercise such jurisdiction in this case. Id. at 727.

Here though the Court is able to dispose of plaintiff Guild's breach of contract/fraud claim without involving itself in the intricacies of state law. As discussed above, the only evidence plaintiff Guild has introduced as evidence of breach of contract or fraud on the part of defendant consists of the statements attributed to Chief Gulla and Detective Smith by Detective Rodrigue. Also as discussed above, however, such evidence, since it constitutes hearsay, may not be relied on by plaintiff Guild to oppose defendant's motion for summary judgment. That is, as with plaintiff Montgomery's due process claims, plaintiff Guild cannot establish there is a genuine issue of material fact as to its fraud/breach of contract claim. As such, the Court finds that claim should be dismissed as well.

## CONCLUSION

Defendant has met its burden of demonstrating that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Plaintiffs have failed in all instances to allege facts sufficient to establish a constitutional violation or breach of contract. Accordingly, defendant's motion for summary judgment and dismissal (Dkt. #12) hereby is GRANTED, and plaintiffs' claims against defendant hereby are DISMISSED. All other motions currently pending before the Court, including the parties' agreed motion and order for continuance of motions deadline and discovery cutoff (Dkt. #27), hereby are DISMISSED as well.

DATED this 23rd day of June, 2006.

Karen L. Strombom
United States Magistrate Judge

---

be said to have been absolutely devoid of merit or obviously frivolous for jurisdictional purposes.